JENNIFER A. SORENSON (SBN 268665)
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
Telephone: (415) 875-6164
Fax: (415) 795-4799
E-mail: jsorenson@nrdc.org

*Counsel for Plaintiff Natural Resources Defense Council*

GREGORY C. LOARIE (SBN 215859)
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
Telephone: (415) 217-2000
Fax: (415) 217-2040
E-mail: gloarie@earthjustice.org

*Counsel for Plaintiffs Sierra Club and*
*Consumer Federation of America;*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC.; SIERRA CLUB; and CONSUMER FEDERATION OF AMERICA,<br><br>        Plaintiffs,<br><br>v.<br><br>RICK PERRY, in his official capacity as Secretary of the United States Department of Energy; and the UNITED STATES DEPARTMENT OF ENERGY,<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1.       This lawsuit challenges the U.S. Department of Energy's (DOE's) unlawful withholding of publication of five final rules developed under the Energy Policy and Conservation Act (EPCA). The five rules establish cost-effective, technologically justified, consumer-friendly, and environmentally beneficial energy-conservation standards for several categories of home appliances and commercial and industrial equipment: portable air conditioners, uninterruptible power supplies, air compressors, walk-in coolers and freezers, and commercial packaged boilers.

2.       DOE adopted the five final rules in December 2016. Each rule is the result of a robust rulemaking process in which the agency collected input from manufacturers, trade associations, consumer advocates, and others in public meetings and through public comments. An authorized DOE official signed and dated each rule, and the agency posted the final rules on its website for a 45-day error-correction period, pursuant to the agency's error-correction regulation.

3.       DOE's error-correction regulation allows the public to alert the agency to a minor error in a final energy-conservation rule—such as a "typographical," "calculation," or "numbering" error—before the rule is published. The regulation mandates that, following the 45-day period for public review, DOE must submit the final rule to the Office of the Federal Register for publication. If DOE deems any corrections necessary, the agency has 30 days, absent extenuating circumstances, to submit a corrected rule for publication.

4.       The last of the public-review periods for the five final rules ended on February 11, 2017. As far as plaintiffs are aware, DOE received no correction requests for the portable air conditioners rule, the uninterruptible power supplies rule, the air compressors rule, or the walk-in coolers and freezers rule. DOE received three correction requests purporting to identify errors in the commercial packaged boilers rule.

5.       DOE has not submitted any of the final rules to the Office of the Federal Register for publication.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

6.      DOE's failure to submit the five final rules for publication violates the agency's error-correction regulation under EPCA. In the alternative, DOE's failure to publish the rules violates the Administrative Procedure Act and the Federal Register Act.

7.      In addition, two of the five final rules—the uninterruptible power supplies rule and the walk-in coolers and freezers rule—are subject to statutory deadlines that DOE has missed. DOE's failure to publish these rules by the deadlines prescribed by Congress violates EPCA.

8.      DOE's unlawful failure to publish the five final energy-conservation rules deprives plaintiffs, their members, and the American public of the substantial benefits the rules would bring, including lower energy bills, a more reliable electricity grid, and reduced emissions of harmful air pollutants that threaten public health.

9.      Plaintiffs seek an order enjoining DOE to ensure immediate publication of the five final rules in the Federal Register.

## JURISDICTION

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 6305(a)(2)-(3) and 6316, and 5 U.S.C. § 702.

11.      DOE's failure to submit the portable air conditioners rule, the uninterruptible power supplies rule, the air compressors rule, the walk-in coolers and freezers rule, and the commercial packaged boilers rule for publication in the Federal Register is a failure to perform a nondiscretionary duty under DOE's regulations implementing EPCA, 10 C.F.R. § 430.5, and is subject to judicial review, 42 U.S.C. §§ 6305(a)(2), 6316.

12.      Plaintiffs have provided DOE and the Federal Trade Commission with at least sixty days' written notice of the violations of DOE's regulations under EPCA, in the manner required by law. *Id.* § 6305(b)(2). A copy of plaintiffs' notice letter is attached as Exhibit A to this Complaint.

13.      In the alternative, DOE's failure to publish the five final energy-conservation rules in the Federal Register is an agency action unlawfully withheld, in violation of the

3

1   Administrative Procedure Act, 5 U.S.C. § 552(a)(1)(D), and the Federal Register Act, 44

2   U.S.C. §§ 1503, 1505, and is subject to judicial review, 5 U.S.C. §§ 702, 706(1).

3      14.   In addition, DOE's failure to publish the final energy-conservation rules for

4   uninterruptible power supplies and walk-in coolers and freezers is a failure of Secretary of

5   Energy Rick Perry to comply with a nondiscretionary duty to issue final rules according to

6   the schedules set forth in 42 U.S.C. §§ 6295 and 6313, and is subject to judicial review, *id.*

7   §§ 6305(a)(3), 6316.

8      15.   This Court has the authority to grant the requested declaratory and

9   injunctive relief pursuant to 28 U.S.C. §§ 2201-2202, 42 U.S.C. § 6305(a)(2)-(3), and 5 U.S.C.

10   §§ 702 and 706.

11   <center>**VENUE AND INTRADISTRICT ASSIGNMENT**</center>

12      16.   Venue is proper in the Northern District of California under 28 U.S.C.

13   § 1391(e)(1)(C) because this civil action is brought against an agency of the United States

14   and an officer and employee of the United States acting in his official capacity and under

15   the color of legal authority, Plaintiff Sierra Club resides in the Northern District of

16   California, and no real property is involved in the action.

17      17.   Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco

18   Division or the Oakland Division is appropriate because Plaintiff Sierra Club resides in

19   Alameda County.

20   <center>**THE PARTIES**</center>

21   The Plaintiffs

22      18.   Plaintiff Natural Resources Defense Council, Inc. (NRDC), is a national,

23   nonprofit environmental and public health organization with several hundred thousand

24   members. NRDC engages in research, advocacy, media, and litigation related to protecting

25   public health and the environment. One of NRDC's top priorities is to fight climate change

26   by cutting carbon emissions and building the clean energy economy. As part of this work,

27   NRDC promotes the use of sustainable energy sources and energy efficiency to reduce

28   greenhouse gas pollution, lower consumer energy bills, and minimize the adverse

<center>4</center>

---

1  environmental impacts of electricity generation and natural gas production. NRDC has
2  participated in the majority of DOE's rulemakings to develop efficiency standards for
3  appliances and commercial equipment, including the rulemakings for the portable air
4  conditioners rule, the uninterruptible power supplies rule, the air compressors rule, the
5  walk-in coolers and freezers rule, and the commercial packaged boilers rule.

6      19.    Plaintiff Sierra Club is a national, nonprofit environmental organization with
7  hundreds of thousands of members nationwide. Sierra Club's purposes include practicing
8  and promoting the responsible use of the Earth's ecosystems and resources. Energy
9  efficiency is crucial to achieving Sierra Club's mission, and Sierra Club has a variety of
10  initiatives designed to encourage businesses, individuals, and utilities to undertake
11  energy-conservation measures.

12      20.    Plaintiff Consumer Federation of America (CFA) is an association of more
13  than 250 nonprofit consumer organizations established to advance the consumer interest
14  through research, advocacy, and education. CFA has long supported cost-effective energy-
15  efficiency standards and DOE's efficiency standards program for consumer products.

16      21.    Plaintiffs and their members and constituents have strong environmental,
17  health, and consumer interests in the prompt publication of the final energy-conservation
18  rules for portable air conditioners, uninterruptible power supplies, air compressors, walk-
19  in coolers and freezers, and commercial packaged boilers. Plaintiffs and their members
20  include consumers and business owners who use, or whose businesses use, portable air
21  conditioners, uninterruptible power supplies, walk-in coolers and freezers, and
22  commercial packaged boilers. The rules will help plaintiffs and their members save energy
23  and lower their energy bills; will reduce air pollution emissions from power plants and
24  other electricity generators and the adverse health impacts from those emissions; will
25  reduce the possibility of electric shortages and blackouts; will keep wholesale electricity
26  prices down during periods of peak electricity demand; and will help avoid the need to
27  build new power plants. In the absence of a court order requiring DOE to publish the five
28  final rules, there is no indication that the rules will be published and become effective.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DOE's unlawful failure to publish the five final rules harms the environmental, health, and consumer interests of plaintiffs and their members and constituents because it denies them the benefits that the energy-conservation rules would bring. Plaintiffs' injuries will be redressed by the requested relief.

The Defendants

22.    Defendant Rick Perry, Secretary of Energy, is the head of DOE and is responsible for ensuring compliance with EPCA. Defendant Perry is sued in his official capacity.

23.    Defendant DOE is an agency of the United States Government. DOE is responsible for administering EPCA, and is the agency whose failure to act as required by law is challenged here.

## STATUTORY AND REGULATORY BACKGROUND

24.    DOE must comply with the following federal statutes, among others: EPCA, the Administrative Procedure Act, and the Federal Register Act.

Energy Policy and Conservation Act (EPCA)

25.    Congress enacted EPCA in 1975 to reduce wasteful use of the nation's energy resources following the 1973 oil embargo. *See* Pub. L. No. 94-163, 89 Stat. 871 (1975) (codified at 42 U.S.C. §§ 6291-6309). EPCA's purposes include "conserv[ing] energy supplies through energy conservation programs" and improving the energy efficiency of major appliances. 42 U.S.C. § 6201(4), (5).

26.    Initially, EPCA authorized, but did not require, DOE to establish energy-conservation standards for household appliances, including appliances listed in the Act and other appliances designated by DOE. Congress amended EPCA in 1978, however, and mandated that DOE prescribe energy-conservation standards for thirteen classes of major appliances. *See* National Energy Conservation Policy Act, Pub. L. No. 95-619, 92 Stat. 3206. The 1978 amendments also created a program for improving the efficiency of industrial equipment, now codified at 42 U.S.C. §§ 6311-6317.

27.     In 1987, after NRDC and others successfully sued DOE for its continued failure to set meaningful energy-conservation standards for appliances, *see NRDC v. Herrington*, 768 F.2d 1355 (D.C. Cir. 1985), Congress enacted, and President Reagan signed into law, further amendments to EPCA. *See* National Appliance Energy Conservation Act of 1987, Pub. L. No. 100-12, 101 Stat. 103. The 1987 amendments established energy-conservation standards for household appliances such as room air conditioners, water heaters, and furnaces, and required DOE to review and amend these standards periodically, by specific deadlines. 42 U.S.C. §§ 6291-6309.

28.     Since 1987, Congress has continued to make EPCA stronger. In 1992, President George H.W. Bush signed into law amendments prescribing energy-conservation standards for commercial and industrial equipment such as packaged boilers. *See* Energy Policy Act of 1992, Pub. L. No. 102-486, 106 Stat. 2776.

29.     President George W. Bush signed into law additional strengthening amendments in 2005 and 2007. *See* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594; Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492. The 2007 amendments required DOE to set energy-conservation standards for battery chargers (which include uninterruptible power supplies), or determine that no standard was technically feasible and economically justified, by July 1, 2011, 42 U.S.C. § 6295(u)(1)(E)(i)(II), and required DOE to set energy-conservation standards for walk-in coolers and freezers by January 1, 2012, *id.* § 6313(f)(4)(A).

30.     When DOE establishes or amends an energy-conservation standard under EPCA, the standard must be designed to achieve the maximum improvement in energy efficiency that is technologically feasible and economically justified. *Id.* §§ 6295(o)(2)(A), 6316(a). The standard must also result in significant conservation of energy. *Id.* §§ 6295(o)(3)(B), 6316(a).

31.     DOE must review its existing standards at least every six years and either determine that the standards do not need to be amended or propose new standards. *Id.* §§ 6295(m)(1), 6313(a)(6)(C)(i). If DOE proposes new standards, then it must publish a final

rule within two years of issuing a notice of proposed rulemaking. *Id.* §§ 6295(m)(3), 6313(a)(6)(C)(iii).

32.     EPCA contains an "anti-backsliding" provision, which prevents DOE from prescribing any amended standard that either increases the maximum allowable energy use or decreases the minimum required energy efficiency of a covered product. *Id.* §§ 6295(o)(1), 6313(a)(6)(B)(iii)(I).

33.     EPCA's energy-conservation standards program for appliances and equipment has been highly effective in improving our nation's energy efficiency, saving consumers money, and avoiding emissions of greenhouse gases and other air pollutants. DOE estimates that, by 2030, the standards completed through 2016 will save more energy than the entire nation consumes in one year, and will save consumers more than $2 trillion on their utility bills. Reduced energy use also avoids emissions of harmful air pollutants: through 2030, standards completed through 2016 will cut emissions of more than 7.9 billion metric tons of carbon dioxide, more greenhouse gas emissions than the entire United States generates in a year.

DOE's Error-Correction Regulation

34.     At the conclusion of a rulemaking establishing or amending an energy-conservation standard under EPCA, DOE is required by regulation to post the signed final rule on its website for a 45-day error-correction period. 10 C.F.R. § 430.5(c).

35.     The "posting of an energy conservation standards rule signals the end of DOE's substantive analysis and decision-making regarding the applicable standards." 81 Fed. Reg. 57,745, 57,751 (Aug. 24, 2016).

36.     During the 45-day period, any person may identify a potential error in the rule and request that DOE correct it. 10 C.F.R. § 430.5(d). An error is defined as "an aspect of the regulatory text of a rule that is inconsistent with what [DOE] intended regarding the rule at the time of posting," for example, a "typographical," "calculation," or "numbering" mistake. *Id.* § 430.5(b).

8

37.     DOE must take one of three actions after the 45-day public-review period ends:

    a.    If DOE receives a request for correction but decides not to make any corrections, it "will submit the rule for publication to the Office of the Federal Register as it was posted." *Id.* § 430.5(f)(1).

    b.    If DOE receives no requests, it "will in due course submit the rule, as it was posted . . . , to the Office of the Federal Register for publication. This will occur after" the 45-day public-review period "has elapsed." *Id.* § 430.5(f)(2).

    c.    If DOE receives a request and determines that a correction is necessary, it "will, absent extenuating circumstances, submit a corrected rule for publication in the Federal Register within 30 days" after the 45-day public-review period "has elapsed." *Id.* § 430.5(f)(3).

<u>Administrative Procedure Act</u>

38.     The Administrative Procedure Act, as amended by the Freedom of Information Act, mandates that "[e]ach agency shall separately state and currently publish in the Federal Register . . . substantive rules of general applicability adopted as authorized by law." 5 U.S.C. § 552(a)(1)(D).

39.     The Administrative Procedure Act also provides for judicial review of agency action, *id.* § 702, and authorizes the reviewing court to "compel agency action unlawfully withheld," *id.* § 706(1).

<u>Federal Register Act</u>

40.     The Federal Register Act instructs that documents "required or authorized to be published by section 1505 of this title shall be filed with the Office of the Federal Register." 44 U.S.C. § 1503.

41.     Section 1505(a)(3) of the Federal Register Act provides, in turn, that "[t]here shall be published in the Federal Register . . . documents or classes of documents that may

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

be required so to be published by Act of Congress." *Id.* § 1505(a)(3). Under the Administrative Procedure Act, this includes agency rules.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

42.     In December 2016, DOE posted five signed final rules on its website. These rules establish energy-conservation standards for portable air conditioners, uninterruptible power supplies, air compressors, walk-in coolers and freezers, and commercial packaged boilers.

The Portable Air Conditioners Rule

43.     Portable air conditioners are similar to window air conditioners, but instead of being mounted in a window, they stand on the floor and use an exhaust hose to expel hot air through a window. Portable air conditioners have never been subject to an energy-conservation standard and are less efficient than other cooling equipment. On average, portable air conditioners use about twice as much energy per year as new window air conditioners, which have had to meet federal energy-conservation standards for more than 25 years.[1]



---

[1] All photos in this Complaint are intended to be illustrative and do not necessarily represent the specific products that would be regulated under the standards at issue.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

44. In 2013, DOE proposed determining that portable air conditioners were covered products under EPCA and invited public comment on the issue. 78 Fed. Reg. 40,403 (July 5, 2013); *see* 42 U.S.C. § 6292(a)(20), (b) (authorizing DOE to designate appliances as covered products). DOE made a final determination of coverage in 2016. 81 Fed. Reg. 22,514 (Apr. 18, 2016).

45. In 2015, while still evaluating possible coverage, DOE released a preliminary technical analysis of potential energy-conservation standards for portable air conditioners and announced a public meeting and comment period for discussion of the analysis. 80 Fed. Reg. 10,628 (Feb. 27, 2015). In June 2016, DOE issued a proposed rule setting forth energy-conservation standards for portable air conditioners, announced a public meeting, and invited public comment. 81 Fed. Reg. 38,398 (June 13, 2016).

46. On December 28, 2016, DOE's Acting Assistant Secretary for Energy Efficiency and Renewable Energy signed a final rule establishing energy-conservation standards for portable air conditioners. On the same day, DOE posted the signed and dated final rule on its website with the following notice:

> The text of this rule is subject to correction based on the identification of errors as defined in 10 CFR 430.5 before publication in the Federal Register. Readers are requested to notify DOE by email at ErrorCorrectionInfo@EE.DOE.Gov of any typographical or other errors, as described in such regulations, by no later than midnight on February 11, 2017, in order that DOE may make any necessary corrections in the regulatory text submitted to the Office of the Federal Register for publication.

47. DOE concluded that the energy-conservation standards in the portable air conditioners final rule "represent the maximum improvement in energy efficiency that is technologically feasible and economically justified, and would result in significant conservation of energy." The agency projected that the standards would save approximately 0.49 quadrillion BTUs (or "quads") of energy over a 30-year period, and

would save consumers up to $3 billion.[2] According to DOE, these savings will also avoid emissions of approximately 25.6 million metric tons of carbon dioxide—equivalent to the annual emissions of 5.4 million cars—as well as 16,400 tons of sulfur dioxide, 32,200 tons of nitrogen oxides, and emissions of methane, nitrous oxide, and mercury.

48.     On information and belief, DOE did not receive any communications claiming to identify errors in the portable air conditioners final rule.

49.     On information and belief, as of the date of this Complaint, DOE has not submitted the portable air conditioners final rule to the Office of the Federal Register for publication.

The Uninterruptible Power Supplies Rule

50.     Uninterruptible power supplies are backup battery and charging systems that operate automatically to keep electronics running when the power fluctuates or goes out. They are used with desktop computers and other sensitive electronic devices in homes and businesses, and they consume energy to keep the backup battery charged.



[2] This estimate of consumer savings, and the estimates given for the rules discussed in the following paragraphs, represents the estimated total value of future utility bill savings minus the estimated costs of purchasing new products.

51.     In a 2007 amendment to EPCA, Congress charged DOE with prescribing energy-conservation standards for battery chargers, or determining that no standard was technically feasible and economically justified, by July 1, 2011. 42 U.S.C. § 6295(u)(1)(E)(i)(II). DOE has concluded that uninterruptible power supplies are a class of battery chargers.

52.     In 2012, DOE proposed energy-conservation standards for battery chargers, including uninterruptible power supplies, invited public comment, and held a public meeting. 77 Fed. Reg. 18,478 (Mar. 27, 2012). Subsequently, DOE considered whether to regulate uninterruptible power supplies as part of a separate rulemaking on computers and battery backup systems. *See* 79 Fed. Reg. 11,345 (Feb. 28, 2014); 79 Fed. Reg. 41,656 (July 17, 2014). In June 2016, DOE issued a final rule establishing energy-conservation standards for battery chargers other than uninterruptible power supplies. 81 Fed. Reg. 38,266, 38,275 (June 13, 2016). In that rule, DOE stated that it would "continue to conduct rulemaking activities" to evaluate energy-conservation standards for uninterruptible power supplies "as part of ongoing and future battery charger rulemaking proceedings." *Id.*

53.     In August 2016, DOE issued a proposed rule containing energy-conservation standards for uninterruptible power supplies, announced a public meeting, and invited public comment. 81 Fed. Reg. 52,196 (Aug. 5, 2016).

54.     On December 28, 2016, DOE's Acting Assistant Secretary for Energy Efficiency and Renewable Energy signed a final rule establishing energy-conservation standards for uninterruptible power supplies. On the same day, DOE posted the signed and dated final rule on its website with the following notice:

> The text of this rule is subject to correction based on the identification of errors as defined in 10 CFR 430.5 before publication in the Federal Register. Readers are requested to notify DOE by email at ErrorCorrectionInfo@EE.DOE.Gov of any typographical or other errors, as described in such regulations, by no later than midnight on February 11,

13

2017, in order that DOE may make any necessary corrections in the regulatory text submitted to the Office of the Federal Register for publication.

55.     The uninterruptible power supplies final rule refers to the EPCA provision requiring standards for battery chargers, 42 U.S.C. § 6295(u)(1)(E), as the source of authority for the rule.

56.     DOE concluded that the energy-conservation standards in the uninterruptible power supplies final rule "represent the maximum improvement in energy efficiency that is technologically feasible and economically justified, and would result in significant conservation of energy." The agency projected that the standards would cut energy use by approximately 0.94 quads of energy over a 30-year period, and would save consumers and businesses up to $3 billion. By some estimates, those energy savings are enough to power 7 million U.S. homes for a year. According to DOE, these savings will also avoid emissions of approximately 49 million metric tons of carbon dioxide, 39,000 tons of sulfur dioxide, and 63,000 tons of nitrogen oxides, as well as emissions of methane, nitrous oxide, and mercury.

57.     On information and belief, DOE did not receive any communications claiming to identify errors in the uninterruptible power supplies final rule.

58.     On information and belief, as of the date of this Complaint, DOE has not submitted the uninterruptible power supplies final rule to the Office of the Federal Register for publication.

14

The Air Compressors Rule

59.     A compressor is a machine that reduces the volume and increases the pressure of gases. DOE's air compressors rule covers lubricated rotary air compressors rated between 10 and 200 nominal horsepower. These compressors are used to power commercial and industrial equipment including manufacturing robots, pneumatic tools, and paint sprayers.



60.     In 2012, DOE proposed determining that compressors were covered products under EPCA. 77 Fed. Reg. 76,972 (Dec. 31, 2012); 78 Fed. Reg. 8998 (Feb. 7, 2013) (reopening the public comment period); *see* 42 U.S.C. §§ 6311(1)(L), 6312(b) (authorizing DOE to designate industrial equipment as covered products). DOE issued a final determination of coverage in 2016. 81 Fed. Reg. 79,991 (Nov. 15, 2016).

61.     In 2014, DOE published a framework document that discussed potential energy-conservation standards for compressors, announced a public meeting, and invited public comment. 79 Fed. Reg. 6839 (Feb. 5, 2014); *see* 79 Fed. Reg. 15,061 (Mar. 18, 2014) (extending the comment period).

62.     In May 2016, DOE proposed a definition for the term "compressor," 81 Fed. Reg. 27,220, 27,226 (May 5, 2016), and proposed energy-conservation standards for certain

types of air compressors, 81 Fed. Reg. 31,680 (May 19, 2016). DOE held a public meeting to discuss the proposed standards and invited public comment.

63.     On December 5, 2016, DOE's Acting Assistant Secretary for Energy Efficiency and Renewable Energy signed a final rule establishing energy-conservation standards for air compressors. On the same day, DOE posted the signed and dated final rule on its website with the following notice:

> The text of this rule is subject to correction based on the identification of errors as defined in 10 CFR 430.5 before publication in the Federal Register. Readers are requested to notify DOE by email at ApplianceStandardsQuestions@ee.doe.gov of any typographical or other errors, as described in such regulations, by no later than midnight on January 19, 2017, in order that DOE may make any necessary corrections in the regulatory text submitted to the Office of the Federal Register for publication.

64.     DOE concluded that the energy-conservation standards in the air compressors final rule "represent the maximum improvement in energy efficiency that is technologically feasible and economically justified, and will result in significant conservation of energy." The agency projected that the standards would cut energy use by approximately 0.16 quads of energy over a 30-year period, and would save businesses up to $400 million. According to DOE, these savings will also avoid emissions of approximately 8.2 million metric tons of carbon dioxide, 6,500 tons of sulfur dioxide, and 11,000 tons of nitrogen oxides, as well as emissions of methane, nitrous oxide, and mercury.

65.     On information and belief, DOE did not receive any communications claiming to identify errors in the air compressors final rule.

66.     On information and belief, as of the date of this Complaint, DOE has not submitted the air compressors final rule to the Office of the Federal Register for publication.

The Walk-In Coolers and Freezers Rule

67.     Walk-in coolers and freezers ("walk-ins") can be found in supermarkets, restaurants, and convenience stores across the country. They are often constructed on site and are used to temporarily store food or other perishable items. For example, supermarkets keep food in walk-ins before moving it to refrigerated display cases on the store floor.



68.     In a 2007 amendment to EPCA, Congress charged DOE with prescribing energy-conservation standards for walk-ins by January 1, 2012. 42 U.S.C. § 6313(f)(4)(A).

69.     DOE published a final rule establishing energy-conservation standards for walk-ins in 2014. 79 Fed. Reg. 32,050 (June 3, 2014). A trade association and manufacturer filed petitions for review of the final rule, and the case was litigated in the Fifth Circuit Court of Appeals. *Lennox Int'l, Inc. v. DOE*, No. 14-60535 (5th Cir.). As part of a settlement agreement resolving the lawsuit, on August 10, 2015, the Fifth Circuit vacated the standards for six of the nineteen categories of walk-ins and components covered in the final rule. The settlement provided that "DOE will use its best efforts to issue a final rule establishing the remanded standards by December 1, 2016, by negotiated rulemaking or otherwise."

70.     In 2015, DOE established a working group under the Appliance Standards and Rulemaking Federal Advisory Committee, in accordance with the Federal Advisory Committee Act, 5 U.S.C. App. 2, and the Negotiated Rulemaking Act, 5 U.S.C. §§ 561-570. The working group included representatives from manufacturers; trade associations; environmental and energy-conservation advocacy organizations, including Plaintiff NRDC; utilities; and DOE. The working group held thirteen in-person meetings, all open to the public, in the fall of 2015. In December 2015, the working group reached consensus on energy-conservation standards for walk-ins to replace the six standards that had been vacated. The working group collected the standards in a term sheet, which the Advisory Committee then approved.

71.     In September 2016, DOE proposed energy-conservation standards for walk-ins, reflecting the standards negotiated by the working group. 81 Fed. Reg. 62,980 (Sept. 13, 2016). DOE announced a public meeting to discuss the proposed standards and invited public comment.

72.     On December 28, 2016, DOE's Acting Assistant Secretary for Energy Efficiency and Renewable Energy signed a final rule establishing energy-conservation standards for walk-in coolers and freezers. On the same day, DOE posted the signed and dated final rule on its website with the following notice:

> The text of this rule is subject to correction based on the identification of errors as defined in 10 CFR 430.5 before publication in the Federal Register. Readers are requested to notify DOE by email at ErrorCorrectionInfo@EE.DOE.Gov of any typographical or other errors, as described in such regulations, by no later than midnight on February 11, 2017, in order that DOE may make any necessary corrections in the regulatory text submitted to the Office of the Federal Register for publication.

73.     DOE concluded that the energy-conservation standards in the walk-ins final rule, which reflect the consensus negotiated by the working group, "represent the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

maximum improvement in energy efficiency that is technologically feasible and economically justified, and would result in significant conservation of energy." The agency projected that the standards would cut energy use by approximately 0.9 quads of energy over a 30-year period, and would save businesses up to $3.2 billion. By some estimates, those energy savings are enough to power 7 million U.S. homes for a year. According to DOE, these savings will also avoid emissions of approximately 46 million metric tons of carbon dioxide, 36,000 tons of sulfur dioxide, and 58,000 tons of nitrogen oxides, as well as emissions of methane, nitrous oxide, and mercury.

74.     On information and belief, DOE did not receive any communications claiming to identify errors in the walk-ins final rule.

75.     On information and belief, as of the date of this Complaint, DOE has not submitted the walk-ins final rule to the Office of the Federal Register for publication.

The Commercial Packaged Boilers Rule

76.     Commercial packaged boilers are used to heat commercial and multifamily residential buildings. They are powered by oil or natural gas and are generally used in buildings with a central distribution system that circulates steam or hot water from the boiler to other parts of the building. Nearly a quarter of the commercial floor space in the United States is heated by packaged boilers, and space heating uses far more energy than any other activity in these and other commercial buildings.



COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

77.     The American Society of Heating, Refrigerating, and Air-Conditioning Engineers (ASHRAE) publishes Standard 90.1, a model energy-efficiency code for commercial buildings. ASHRAE Standard 90.1 sets energy-efficiency levels for several types of heating and cooling equipment used in these buildings, including commercial packaged boilers. EPCA mandates that if ASHRAE amends Standard 90.1 with respect to commercial packaged boilers, DOE must adopt amended energy-conservation standards at the ASHRAE level, unless DOE determines that adoption of a more stringent standard would be justified. 42 U.S.C. § 6313(a)(6)(A)(ii).

78.     Additionally, EPCA requires DOE to review its energy-conservation standards for commercial packaged boilers every six years and either determine that the standards do not need to be amended or propose amended standards. *Id.* § 6313(a)(6)(C)(i). If DOE proposes new standards, then it must publish a final rule within two years. *Id.* § 6313(a)(6)(C)(iii).

79.     DOE last amended its energy-conservation standards for commercial packaged boilers in July 2009, when it adopted the levels set by a revision of ASHRAE Standard 90.1. 74 Fed. Reg. 36,312 (July 22, 2009). DOE was required to review the standards and either determine that they did not need to be amended, or propose new standards, by July 22, 2015. 42 U.S.C. § 6313(a)(6)(C)(i).

80.     In 2013, DOE published a framework document that discussed DOE's anticipated approach to reviewing the energy-conservation standards for commercial packaged boilers, announced a public meeting, and invited public comment. 78 Fed. Reg. 54,197 (Sept. 3, 2013).

81.     In 2014, DOE published a preliminary technical analysis of potential energy-conservation standards for commercial packaged boilers, announced another public meeting, and invited public comment. 79 Fed. Reg. 69,066 (Nov. 20, 2014).

82.     In March 2016, DOE proposed amended energy-conservation standards for commercial packaged boilers, announced a public meeting to discuss the proposed standards, and invited public comment. 81 Fed. Reg. 15,836 (Mar. 24, 2016).

83.     On December 28, 2016, DOE's Acting Assistant Secretary for Energy Efficiency and Renewable Energy signed a final rule establishing amended energy-conservation standards for commercial packaged boilers. On the same day, DOE posted the signed and dated final rule on its website with the following notice:

> The text of this rule is subject to correction based on the identification of errors as defined in 10 CFR 430.5 before publication in the Federal Register. Readers are requested to notify DOE by email at ErrorCorrectionInfo@EE.DOE.Gov of any typographical or other errors, as described in such regulations, by no later than midnight on February 11, 2017, in order that DOE may make any necessary corrections in the regulatory text submitted to the Office of the Federal Register for publication.

84.     DOE concluded that the amended energy-conservation standards in the commercial packaged boilers final rule "represent significant additional energy conservation and are technologically feasible and economically justified." The agency projected that the standards would cut energy use by approximately 0.27 quads of energy over a 30-year period, and would save customers up to nearly $2 billion. By some estimates, those energy savings are enough to heat all the natural gas-heated homes in New England for a year and a half. According to DOE, these savings will also avoid emissions of approximately 16 million metric tons of carbon dioxide, 3,100 tons of sulfur dioxide, and 41,000 tons of nitrogen oxides, as well as emissions of methane, nitrous oxide, and mercury.

85.     During the 45-day error-correction period, DOE received three letters from industry trade associations and a natural gas distribution company claiming to identify errors in the commercial packaged boilers final rule.

86.     On information and belief, as of the date of this Complaint, DOE has not submitted the commercial packaged boilers final rule to the Office of the Federal Register for publication.

**FIRST CLAIM FOR RELIEF**

87.     Plaintiffs incorporate by reference all preceding paragraphs.

88.     Once DOE has posted a signed, final energy-conservation-standards rule on its website pursuant to the agency's error-correction regulation, the required 45-day period for public review has passed, and, if necessary, DOE has corrected any errors identified in the rule, DOE is required to submit the rule for publication in the Federal Register. 10 C.F.R. § 430.5.

89.     DOE's failure to submit the portable air conditioners rule, the uninterruptible power supplies rule, the air compressors rule, the walk-in coolers and freezers rule, and the commercial packaged boilers rule for publication in the Federal Register following the conclusion of the error-correction period for each rule violates 10 C.F.R. § 430.5, and constitutes a failure to perform a nondiscretionary duty under EPCA, 42 U.S.C. § 6305(a)(2).

**SECOND CLAIM FOR RELIEF**

90.     Plaintiffs incorporate by reference all preceding paragraphs.

91.     In the alternative, once DOE has adopted a substantive rule of general applicability, the Administrative Procedure Act requires the agency to publish the rule in the Federal Register. 5 U.S.C. § 552(a)(1)(D).

92.     DOE adopted the portable air conditioners rule, the uninterruptible power supplies rule, the air compressors rule, the walk-in coolers and freezers rule, and the commercial packaged boilers rule, each of which was signed and dated by the Acting Assistant Secretary and posted on the agency's website.

93.     DOE's failure to publish the portable air conditioners rule, the uninterruptible power supplies rule, the air compressors rule, the walk-in coolers and freezers rule, and the commercial packaged boilers rule in the Federal Register violates the Administrative Procedure Act, 5 U.S.C. § 552(a)(1)(D), and constitutes an agency action unlawfully withheld, 5 U.S.C. § 706(1).

1

**THIRD CLAIM FOR RELIEF**

2

94.     Plaintiffs incorporate by reference all preceding paragraphs.

3

95.     The Federal Register Act provides that documents "shall be filed with the

4

Office of the Federal Register," 44 U.S.C. § 1503, if an Act of Congress requires that they be

5

published in the Federal Register, *id.* § 1505(a).

6

96.     The Administrative Procedure Act is an Act of Congress requiring that

7

"substantive rules of general applicability" be published in the Federal Register. 5 U.S.C.

8

§ 552(a)(1)(D).

9

97.     The portable air conditioners rule, the uninterruptible power supplies rule,

10

the air compressors rule, the walk-in coolers and freezers rule, and the commercial

11

packaged boilers rule are substantive rules of general applicability that DOE adopted as

12

authorized by law. *Id.*

13

98.     DOE's failure to file the portable air conditioners rule, the uninterruptible

14

power supplies rule, the air compressors rule, the walk-in coolers and freezers rule, and

15

the commercial packaged boilers rule with the Office of the Federal Register for

16

publication violates the Federal Register Act, 44 U.S.C. §§ 1503 and 1505, and constitutes

17

an agency action unlawfully withheld, 5 U.S.C. § 706(1).

18

**FOURTH CLAIM FOR RELIEF**

19

99.     Plaintiffs incorporate by reference all preceding paragraphs.

20

100.    Congress required DOE, not later than July 1, 2011, to prescribe energy-

21

conservation standards for battery chargers, or to determine that no standard was

22

technically feasible and economically justified. 42 U.S.C. § 6295(u)(1)(E)(i)(II).

23

101.    Although DOE published a final rule in June 2016 that established energy-

24

conservation standards for some classes of battery chargers, DOE did not in that rule

25

prescribe energy-conservation standards for uninterruptible power supplies or determine

26

that no standard for uninterruptible power supplies was technically feasible and

27

economically justified. 81 Fed. Reg. 38,266 (June 13, 2016).

28

102. By failing to publish a final rule prescribing energy-conservation standards for uninterruptible power supplies, DOE has violated the statutory deadline for publication of the final rule required in 42 U.S.C. § 6295(u)(1)(E)(i)(II). DOE has thereby failed "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in section 6295." *Id.* § 6305(a)(3).

## FIFTH CLAIM FOR RELIEF

103. Plaintiffs incorporate by reference all preceding paragraphs.

104. Congress required DOE, not later than January 1, 2012, to prescribe energy-conservation standards for walk-in coolers and freezers. 42 U.S.C. § 6313(f)(4)(A).

105. Although DOE published a final rule in June 2014 that established energy-conservation standards for walk-ins, 79 Fed. Reg. 32,050 (June 3, 2014), the standards for six of the nineteen classes of walk-ins were vacated by a court order with DOE's consent. Order of Aug. 10, 2015, *Lennox Int'l, Inc. v. DOE*, No. 14-60535 (5th Cir.).

106. Because DOE has failed to replace the vacated standards for the six classes of walk-ins, DOE has not fulfilled its obligation to prescribe energy-conservation standards for those six classes of walk-ins. Accordingly, DOE has violated the statutory deadline for publication of the final rule required in 42 U.S.C. § 6313(f)(4)(A). DOE has thereby failed "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in section [6313]." *Id.* §§ 6305(a)(3), 6316(a) (making § 6305(a)(3) applicable to the schedule set forth in § 6313(f)(4)(A)).

## REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court:

1. Advance on the docket and expedite the decision of this case pursuant to 42 U.S.C. § 6305(a);

2. Declare that defendants are each in violation of the Energy Policy and Conservation Act, or, in the alternative, the Administrative Procedure Act and the Federal Register Act, as described above;

3.      Enjoin defendants to ensure publication of the portable air conditioners rule, the uninterruptible power supplies rule, the air compressors rule, the walk-in coolers and freezers rule, and the commercial packaged boilers rule in the Federal Register immediately;

4.      Grant plaintiffs their costs of suit, including reasonable attorney fees;

5.      Grant plaintiffs such further relief as is necessary and appropriate.


Dated: June 13, 2017                    Respectfully submitted,

/s/ Jennifer A. Sorenson
JENNIFER A. SORENSON (SBN 268665)
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
Telephone: (415) 875-6164
Fax: (415) 795-4799
E-mail: jsorenson@nrdc.org

AARON COLANGELO, *pro hac vice* application pending
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, DC 20005
Telephone: (202) 289-2376
Fax: (415) 795-4799
E-mail: acolangelo@nrdc.org

*Counsel for Plaintiff Natural Resources
Defense Council*

/s/ Gregory C. Loarie
GREGORY C. LOARIE (SBN 215859)
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
Telephone: (415) 217-2000
Fax: (415) 217-2040
E-mail: gloarie@earthjustice.org

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

TIMOTHY D. BALLO, *pro hac vice* application pending
Earthjustice
1625 Massachusetts Avenue, NW
Suite 702
Washington, DC 20036
Telephone: (202) 745-5209
Fax: (202) 667-2356
E-mail: tballo@earthjustice.org

*Counsel for Plaintiffs Sierra Club and*
*Consumer Federation of America*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# Exhibit A

NATURAL RESOURCES DEFENSE COUNCIL

SIERRA CLUB

CONSUMER FEDERATION OF AMERICA

April 3, 2017

BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Hon. James Richard Perry, Secretary
U.S. Department of Energy
1000 Independence Avenue, SW
Washington, DC 20585

Re:     60-day notice of intent to sue for violations of the Energy Policy and
        Conservation Act

Dear Secretary Perry:

On behalf of the Natural Resources Defense Council, Sierra Club, and Consumer
Federation of America, we write to urge the Department of Energy to comply with its
duty to publish in the Federal Register five final rules prescribing energy conservation
standards under the Energy Policy and Conservation Act (EPCA). Each of the five
rules—which cover compressors, uninterruptible power supplies, walk-in coolers and
freezers, portable air conditioners, and commercial packaged boilers—is the product of
a robust rulemaking process and was signed by an authorized DOE official in
December 2016.[1] DOE regulations mandate that the Department now take the final step
required to ensure the rules' effectiveness: send them to the Office of the Federal
Register for publication.

---

[1] Energy Conservation Standards for Portable Air Conditioners, Docket No. EERE-2013-
BT-STD-0033 (posted Dec. 28, 2016); Energy Conservation Standards for Uninterruptible
Power Supplies, Docket No. EERE-2016-BT-STD-0022 (posted Dec. 28, 2016); Energy
Conservation Standards for Air Compressors, Docket No. EERE-2013-BT-STD-0040
(posted Dec. 5, 2016); Energy Conservation Standards for Walk-in Cooler and Freezer
Refrigeration Systems, Docket No. EERE-2015-BT-STD-0016 (posted Dec. 28, 2016);
Energy Conservation Standards for Commercial Packaged Boilers, Docket No. EERE-
2013-BT-STD-0030 (posted Dec. 28, 2016).

1

Energy efficiency is the most affordable and effective solution to America's energy problems. Appliance and equipment efficiency standards save energy, increase the reliability of the electricity grid, reduce consumer energy bills, and decrease pollution. DOE's energy efficiency standards program has been transformative in making U.S. buildings and products more efficient. The program has a long history of bipartisan support. President Reagan signed into law the provisions of EPCA that establish appliance efficiency standards, while Presidents George H.W. Bush and George W. Bush signed strengthening legislation.[2]

The five rules awaiting publication will provide important benefits to our organizations, our members, and the American public. According to DOE projections, the standards prescribed by the rules will save approximately 2.76 quads of energy—about 3 percent of all the energy used in the United States for all purposes in a year—over a 30-year period. These energy savings will save consumers money on their utility bills: combined, the standards will yield more than $11 billion in consumer net-present-value savings over 30 years of shipments. The standards will also reduce emissions of carbon dioxide by more than 25 million metric tons by 2030—equivalent to the emissions generated by the annual electricity use of more than 3 million U.S. homes. Additionally, the standards will enhance public health by reducing emissions of other harmful air pollutants, such as sulfur dioxide and nitrogen oxides, by hundreds of thousands of tons.

None of these benefits will accrue, however, unless DOE complies with its regulations and publishes the final rules in the Federal Register. We respectfully request that DOE immediately send the final rules to the Office of the Federal Register and ensure that they are published. If DOE fails to do so, we intend to commence litigation to enforce DOE's regulatory duty to publish the final rules.

<u>DOE's Legal Obligations</u>

At the conclusion of a rulemaking establishing or amending an energy conservation standard under EPCA, DOE is required by regulation to post the signed final rule on its website for a 45-day public inspection period. 10 C.F.R. § 430.5(c). The "posting of an energy conservation standards rule signals the end of DOE's substantive analysis and decision-making regarding the applicable standards." 81 Fed. Reg. 57,745, 57,751 (Aug.

---

[2] *See* Pub. L. 100-12; Pub. L. 100-357; Pub, L. 102-486; Pub. L. 109-58; Pub. L. 110-140.

24, 2016). During the 45-day period, any person may identify a potential error in the rule and request that DOE correct it. 10 C.F.R. § 430.5(d). DOE's regulations define an error as "an aspect of the regulatory text of a rule that is inconsistent with what [DOE] intended regarding the rule at the time of posting," for example, a "typographical," "calculation," or "numbering" mistake. *Id.* § 430.5(b).

The regulations mandate that DOE take one of three courses of action after the 45-day inspection period ends:

(1) If DOE receives a request for correction but decides not to make any corrections, DOE "will submit the rule for publication to the Office of the Federal Register as it was posted." *Id.* § 430.5(f)(1).

(2) If DOE receives no requests, the Department "will in due course submit the rule, as it was posted . . . , to the Office of the Federal Register for publication. This will occur after" the 45-day inspection period "has elapsed." *Id.* § 430.5(f)(2).

(3) If DOE receives a request and determines that a correction is necessary, the Department "will, absent extenuating circumstances, submit a corrected rule for publication in the Federal Register within 30 days" after the 45-day inspection period "has elapsed." *Id.* § 430.5(f)(3).

As required by these regulations, DOE posted the five signed, final rules on its website in December 2016. For the compressors rule, the 45-day inspection period ended on January 19, 2017. For the remaining four rules, the period ended on February 11, 2017. Based on information available in the rulemaking dockets, DOE received requests to correct alleged errors in the commercial packaged boiler rule, but received no correction requests for the other four rules.

It has been more than 30 days since the 45-day inspection period ended for all five rules, *see id.* § 430.5(f)(3), and DOE is now required to submit the five rules, as posted or as corrected, to the Office of the Federal Register for publication.

Conclusion

DOE's unlawful failure to send the five final rules to the Office of the Federal Register is unacceptable. The delay in the rules' publication could delay manufacturers' ultimate compliance with the standards, harming our organizations, our members, and American consumers. By failing to ensure the rules' publication in the Federal Register, DOE has failed to perform a nondiscretionary duty under its regulations implementing EPCA, and is therefore subject to suit under 42 U.S.C. § 6305(a) and § 6316, and/or the Administrative Procedure Act.

3

We respectfully request that DOE immediately send the five final rules to the Office of the Federal Register and ensure that they are published in the Federal Register. Although we hope that litigation will not be necessary, if DOE maintains its unlawful inaction, then we intend to commence litigation as early as 60 days from the date of this letter, to compel DOE comply with its nondiscretionary duty to publish the five rules. Accordingly, to the extent required by 42 U.S.C. § 6305(b)(2), we hereby provide notice of our intent to pursue such litigation. Other parties not signatories to this letter may also join this litigation with respect to the same claims covered by this letter.

Respectfully,

Aaron Colangelo                                      Timothy Ballo
Jennifer A. Sorenson                                 Earthjustice
*Counsel for Natural Resources*                      *Counsel for Sierra Club and Consumer*
*Defense Council*                                    *Federation of America*

cc:     Federal Trade Commission
        600 Pennsylvania Ave., NW
        Washington, DC 20580

4